# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# JASPER DIVISION

| | |
|---|---|
| ELTON ASHCRAFT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case Number: 6:17-cv-02170-JHE |
| ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION[1]

Plaintiff Elton Ashcraft ("Ashcraft") seeks review, pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying his application for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). (Doc. 1). Ashcraft timely pursued and exhausted his administrative remedies. This case is therefore ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3). The undersigned has carefully considered the record and, for the reasons stated below, the Commissioner's decision is **REVERSED AND REMANDED**.

### I. Factual and Procedural History

On February 12, 2015, Ashcraft filed an application for a period of disability and DIB, as well as an application for SSI. (Tr. 186-92). In both applications Ashcraft alleged disability beginning January 16, 2015. (*Id.*). These claims were initially denied on June 19, 2015. (Tr. 133-42). Thereafter, Ashcraft filed a written request for a hearing on July 16, 2015. (Tr. 143-44).

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 9).

Ashcraft, represented by counsel, appeared and testified at a hearing before an Administrative Law Judge on August 23, 2016. (Tr. 79-100). After the hearing, the ALJ denied Ashcraft's claim on February 7, 2017. (Tr. 65-74). Ashcraft sought review by the Appeals Council, but it declined his request on October 31, 2017. (Tr. 1-6). On that date, the ALJ's decision became the final decision of the Commissioner. On December 26, 2017, Ashcraft initiated this action. (*See* doc. 1).

Ashcraft was fifty-nine-years-old when he allegedly became disabled, and sixty-one-years-old at the time of the Commissioner's decision. (Tr. 65-74, 85, 186). He has a high school education and past relevant work experience as a salesclerk, store laborer, assistant grocery manager, and construction worker. (Tr. 87-90, 98). Ashcraft alleges he is disabled due to a gastric ulcer with perforation, bile leak, common bile duct obstruction, abdominal pain, low back pain, right shoulder pain, and depression. (Tr. 86, 92-95, 206).

## II. Standard of Review[2]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This Court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

---

[2]In general, the legal standards applied are the same whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

This Court must uphold factual findings supported by substantial evidence. "Substantial evidence may even exist contrary to the findings of the ALJ, and [the reviewing court] may have taken a different view of it as a factfinder. Yet, if there is substantially supportive evidence, the findings cannot be overturned." *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991). However, the Court reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is

---

[3]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499.

disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;
(2) whether the claimant has a severe impairment;
(3) whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
(4) whether the claimant can perform his or her past work; and
(5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show such work exists in the national economy in significant numbers. *Id.*

## IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found Ashcraft met the insured status requirements of the Social Security Act through December 31, 2017, and that Ashcraft had not engaged in substantial gainful activity from his alleged onset date of January 16, 2015. (Tr. 67). At Step Two, the ALJ found Ashcraft has the following severe impairments: peptic ulcer and back pain. (*Id.*). At Step Three, the ALJ found Ashcraft did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 68).

4

Before proceeding to Step Four, the ALJ determined Ashcraft's residual functioning capacity ("RFC"), which is the most a claimant can do despite his impairments. *See* 20 C.F.R. § 404.1545(a)(1). The ALJ determined that Ashcraft had the RFC to perform light work as defined in 20 C.F.R. 404.1567(b) and 416967(b), and Ashcraft could occasionally push/pull and do overhead reaching with the upper right extremity; he could do frequent reaching, handling, and fingering with the right upper extremity; he should do no climbing of ladders, ropes, or scaffolds, but could occasionally climb stairs or ramps; he could occasionally balance, crouch, crawl, or stoop; he should avoid concentrated exposures to heat, cold, and vibrations; he should avoid all hazardous machinery and unprotected heights. (Tr. 69-73).

At Step Four, the ALJ determined Ashcraft is capable of performing his past relevant work as an assistant grocery manager and sales clerk. (Tr. 73). Accordingly, there was no need to proceed to Step Five, and the ALJ determined Ashcraft was not disabled and denied Ashcraft's claim. (*Id.*).

**V. Analysis**

Although the court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or because improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Ashcraft challenges the Commissioner's decision on two specific grounds, contending the ALJ erred: (1) when he found Ashcraft could perform his past relevant work as an assistant

5

manager and sales clerk because the ALJ failed to consider the jobs together as a "composite job;" and (2) by finding Ashcraft's pain and fatigue not disabling. (Doc. 13 at 11-16).

> **A. The ALJ Failed to Consider Whether Ashcraft's Past Relevant Work Was a "Composite Job" and Whether Ashcraft Could Perform His Previous Work as Actually Performed**

When considering whether a claimant can return to past work, the ALJ must (1) consider all the duties of the past relevant work and (2) evaluate the claimant's ability to perform the duties in light of his impairments. *Lucas v. Sullivan*, 918 F.2d 1567, 1574 n.3 (11th Cir. 1990). The burden is on the claimant to show that he can no longer "perform his past *kind* of work, not that he merely [is] unable to perform a specific job he held in the past." *Jackson v. Bowen*, 801 F.2d 1291, 1293 (11th Cir. 1986) (citing 20 C.F.R. §§ 404.1520(e), 416.920(e) (1986)). When a claimant's prior job involved functional demands and duties significantly in excess of those generally required for that type of work by employers in the national economy, it is not enough for the claimant to show that he cannot perform the demands and duties actually involved in the job. Instead, he must show that he cannot perform the functional demands and job duties of the position generally required by employers nationwide. *Jackson*, 801 F.2d at 1293-94; SSR 82-61, 1982 WL 31387 (Jan. 1, 1982).

Ashcraft contends the ALJ erred when he found Ashcraft could return to his past work as an assistant grocery store manager and sales clerk because they were "composite jobs" that included duties beyond his RFC. (Doc. 13 at 11-13). A composite job is one that has "significant elements of two or more occupations and, as such, [has] no counterpart in the DOT." SSR 82-61, 1982 WL 31387 at *2. Past relevant work may qualify as a composite job "if it takes multiple DOT occupations to locate the main duties of the [past relevant work] as described by the claimant." Program Operations Manual System ("POMS") DI 25005.020. Notably, when the

claimant's previous work qualifies as a composite job the standard changes, and the ALJ must

consider the particular facts of the individual case to consider whether the claimant can perform

his previous work as actually performed. *See* SSR 82-61 at *2 (emphasis added).

On his disability report, Ashcraft indicated he worked forty hours a week in "retail management" from January 2000 to January 2015. (Tr. 207). Ashcraft described his tasks as walking for four hours, standing for four hours, and siting for one hour; frequently lifting ten pounds. (Tr. 208). Ashcraft indicated the heaviest weight he lifted as sixty-five pounds, but stated he only handled large objects for about half an hour per day. (*Id.*). At the hearing, Ashcraft testified that his work as an assistant grocery store manager was "very, very strenuous" and, "[e]ven though it was a management job, required him to perform physical tasks, including stocking, unloading trucks, helping on the register and other duties. (Tr. 89). Ashcraft also testified that his part-time work at Dollar General as "sales clerk" included both stocking and cashier-type work. (Tr. 88). He further testified that his last day at Dollar General was January 10, 2015, and that on January 16, 2015, he had to go to the emergency room and ended up staying in the hospital for eight weeks. (*Id.*). Ashcraft's testimony suggests that his duties in these positions may have exceeded the exertional demands of light work activity.

For Ashcraft to prove that his past relevant work as an assistant grocery store manager was a composite job, involving tasks as both an assistant manager and a store laborer, Ashcraft must prove that the non-management physical demands were "main duties" of his position as an assistant grocery store manager. The VE classified Ashcraft's previous work as an assistant grocery store manager as DOT code 189.167-018 "Management Trainee (any industry)," which defines the position as follows:

> Performs assigned duties, under direction of experienced personnel, to gain knowledge and experience required for promotion to management positions:

7

> Receives training and performs duties in several departments, such as credit, customer relations, accounting, or sales, to become familiar with line and staff functions, operations, management viewpoints, and company policies and practices that affect each phase of business. Observes experienced workers to acquire knowledge of methods, procedures, and standards required for performance of departmental duties. Workers are usually trained in functions and operations of related departments to facilitate subsequent transferability between departments and to provide greater promotional opportunities. May be required to attend company-sponsored training classes.

It is apparent that the definition for "Management Trainee (any industry)" does not cover the main duties Ashcraft described when testifying about his assistant grocery store manager job. (Tr. 89). To the contrary, it appears a person would need to look to the store laborer job, which includes distributing products within the establishment, conveys items and materials from receiving, sorts and places materials or items on racks, shelves or bins according to a predetermined sequence, etc., *see* DOT 922.687-058, to find significant elements of Ashcraft's job as an assistant grocery store manager.[4]

Despite Ashcraft's testimony, the ALJ did not address whether Ashcraft's past work as an assistant grocery store manager and a sales clerk were composite jobs. This action will be **REMANDED** for the ALJ to consider whether Ashcraft's previous work as an assistant grocery store manager and a sales clerk qualify as composites jobs, and, if so, to apply the proper standard to determine if Ashcraft can perform his past relevant work.

### B. The ALJ Properly Applied the Eleventh Circuit Pain Standard

Ashcraft also argues the ALJ erred during his evaluation of Ashcraft's subjective complaints of pain and fatigue. (Doc. 13 at 14-16). When a claimant attempts to establish a disability through subjective complaints of pain or other symptoms, he or she is required to show:

---

[4] This same analysis applies to Ashcraft's work as a "sales clerk" at Dollar General where his testimony shows he performed both stocking and cashier type work. (Tr. 88).

(1) evidence of an underlying medical condition, and either (2) objective medical evidence that confirms the severity of the alleged pain or other symptoms arising from that condition, or (3) that the objectively determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged pain or other symptoms. *See* 20 C.F.R. §§ 404.1529(a), (b), 416.929(a), (b); *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).

Here, the ALJ recognized Ashcraft's underlying medical impairments and found that although Ashcraft's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." (Tr. 71). As required, the ALJ clearly articulated reasons for finding Ashcraft's complaints of disabling pain and fatigue not consistent with the record. Ashcraft complained of back pain since at least 2011. (Tr. 771-77). On January 16, 2015, Ashcraft presented to the emergency room with increasing abdominal pain. (Tr. 418). Treating physicians initially determined Ashcraft to have gallstones and scheduled a laparoscopy cholecystectomy for the next day. (Tr. 704-06, *see* 414-702). Upon starting the surgical procedure, doctors observed a leading duodenal ulcer with a walled off abscess, requiring open surgery. (*Id.*). Continuing to decline post-surgery, Ashcraft underwent a second operation on January 23, 2015, to correct a subdiapragmatic hypoalbuminemia. (*Id.*). With slow progress, Ashcraft was moved out of intensive care on January 29, 2015, and began tolerating some food. (*Id.*). Due to pain, Ashcraft refused physical therapy. (*Id.*). Ashcraft then developed pneumonia, which complicated his recovery. (*Id.*). By March 12, 2015, laboratory testing showed sufficient improvement for Ashcraft to be discharged. (*Id.*). Ashcraft presented to the emergency room for abdominal pain on May 10, 2015, and a CT performed on May 11, 2015 indicated no evidence of biliary

9

obstruction or recurrent bile lead and no other acute intraabdominal or pelvic finding. (Tr. 800-01, 867).

At the request of the state agency, on June 2, 2015, Dr. Hirenkumar Jani consultatively examined Ashcraft. (Tr. 761-66). Dr. Jani noted Ashcraft's complaints of back pain, abdominal pain, and numbness in the right hand and fifth finger. (Tr. 762). On examination, Ashcraft was 5'10" in height and weighed 151 pounds, with a blood pressure of 109/66. (Tr. 763). Dr. Jani noted an essentially normal examination as to eyes, ears, nose, throat, neck, chest, heart, and lungs. (Tr. 764). He noted the abdominal scar was well-healed, with positive bowel sounds, no hepatosplenomegaly[5] or masses palpated. (*Id.*). Ashcraft could heel-toe walk, and there was no evidence of any muscle spasm, localized tenderness, or crepitation and handgrip. (Tr. 765). There was no abnormality noted in the sensory exam or reflexes. (*Id.*). Dr. Jani's diagnostic assessment included mid-back pain, chronic abdominal pain, and tingling and numbness in the right ring and little finger, etiology unknown, with good grip. (*Id.*). Dr. Jani opined that Ashcraft could walk and stand at least six hours with no restrictions, could sit with no restrictions, and required no assistive device. (*Id.*). Dr. Jani further opined that Ashcraft could lift fifty pounds frequently and one hundred pounds occasionally with no postural, manipulative, or environmental restrictions. (*Id.*).

June 25, 2015 x-rays confirmed a moderate amount of AC joint arthritis in Ashcraft's shoulder with a probable rotator cuff tear. (Tr. 813). Dr. Robert Sorrell noted significant limitation in the motion of Ashcraft's shoulder and a marked amount of weakness. (*Id.*). Dr. Sorrell wanted to attempt to repair the shoulder, and Ashcraft said he would call Dr. Sorrell if he decided to repair

---

[5] Hepatosplenomegaly is a disorder where both the liver and spleen swell beyond their normal size. *See* www.healthline.com/health/hepatosplenomegaly

the shoulder. (*Id.*). After further discussion, Ashcraft told Dr. Sorrell he wanted to have surgery. (*Id.*). They also discussed an injection, which Ashcraft declined. (*Id.*). Dr. Sorrell prescribed Flexeril for muscle spasms, but declined Ashcraft's request for pain medicine and made a plan to contact a pain management specialist instead. (*Id.*). X-rays of Ashcraft's cervical spine indicated mild arthritis at C5-C6 and C6-C7. (*Id.*).

On February 9, 2016, Ashcraft presented to the emergency room complaining of abdominal pain and pleural fluid. Again, CT scans and laboratory testing yielded negative results. Ashcraft was discharged with medication and instructions to make a follow-up appointment. (Tr. 767-70, 855-66).

In his brief, Ashcraft points to his weight loss after having gastric issues and subjective complaints of stomach pain due to scar tissue from surgery. (Doc. 13 at 15). He asserts he has arthritis and a probable rotator cuff tear. (*Id.*). He points to his testimony that when he left work in January 2015, he was missing work at least one day a week because of fainting spells and pain, and, later that month, ended up in the hospital for eight weeks where he had several gastric procedures. (*Id.* at 16). Ashcraft also complains of pain, fatigue, and nausea since his surgery. (*Id.*). Ashcraft asserts that the consultative examiner, Dr. Hirenkumar Jani "does not discredit these symptoms alleged by plaintiff." (*Id.*).

The ALJ found that Ashcraft's subjective complaints were not entirely consistent with the medical and other evidence in the record and clearly articulated his reasoning. (Tr. 71). Initially, the ALJ found sufficient, objective medical evidence to support that Ashcraft experiences some pain resulting from his degenerative disc disease in his thoracic and cervical spine. (*Id.*). Pointing to the MRIs and x-rays indicating arthritis and mild degenerative joint disease as well as minimal treatment despite continued complaints, the ALJ found the severity of the complaints inconsistent

with the objective evidence. (*Id.*). The ALJ further noted that Dr. Hirenkumar Jani's examination showed that Ashcraft had 5/5 motor strength bilaterally in all extremities, and Dr. Jani opined that Ashcraft could walk and stand for at least six hours without restriction, sit without restriction, lift fifity pounds frequently, and had no manipulative or environmental restrictions. (Tr. 72, 763-65).

Additionally, the ALJ noted that the medical record shows that Ashcraft is "status post peptic ulcer." (*Id.*). Despite Ashcraft's continued complaints of pain, the record notes that the condition is resolved. (*Id.*). Dr. Jani observed Ashcraft's abdomen was not tender and his scar from gastric surgery was well-healed with no external signs or abnormalities. (Tr. 70-71, 764). The ALJ also considered that CT scans and laboratory testing in February 2016, yielded negative results. (Tr. 71, 855-66). The ALJ stated that he fully considered Ashcraft's complaints of pain by assessing only light work with additional restrictions.[6] (Tr. 72).

The ALJ did not err when he considered Ashcraft's subjective complaints of pain. The ALJ properly considered the combination of Ashcraft's mild degenerative disc disease, the status post peptic ulcer, and the non-severe arthritis of the rotator cuff by placing additional specific restrictions on the "light work" RFC, and his reasoning is supported by substantial evidence. (Tr. 69, 72).

## VI. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record

---

[6] Ashcraft argues the ALJ erred because the evidence, specifically Dr. Jani's examination and opinion, does not "discredit" his alleged symptoms. (Doc. 13 at 16). As articulated above, this is not the correct standard, and the ALJ articulated his reasons for finding Ashcraft's complaints inconsistent with the record. Additionally, although doctors noted Ashcraft was "thin" and "need[ed] to gain weight" in April 2015, those same doctors noted Ashcraft was "well-developed." (Tr. 793-94). Furthermore, records indicate that Ashcraft went from weighing 145 and 149 pounds in April 2015 to weighing 160 pounds in February 2016. (Tr. 793-94, 856). At the time of briefing in July 2018, Ashcraft asserted he weighed 165 to 170 pounds.

and memoranda of the parties, the decision of the Commissioner of Social Security denying Ashcraft's claim for a period of disability, DIB, and SSI is **REVERSED** and **REMANDED** for further proceedings consistent with this opinion.

DONE this 26th day of March, 2019.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE